UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. DEVER,<br><br>Plaintiff,<br><br>v.<br><br>ECOLAB, INC.,<br><br>Defendant. | No. 09 CV 425<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff William E. Dever sued his former employer, Defendant Ecolab, Inc., alleging age, race, and disability discrimination in violation of the civil rights laws. By order dated September 30, 2009, I dismissed the disability discrimination claim, finding that Plaintiff had not timely filed a charge of discrimination asserting that theory of discrimination. The case proceeded to discovery on the allegations for which the administrative prerequisites had been satisfied. Now pending is Defendant's motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND

Defendant Ecolab, Inc. is a Delaware company that operates a plant in Elk Grove Village, Illinois. At that facility, Ecolab refurbishes industrial dishwashers, assembles dish racks, and conducts distribution operations.

Plaintiff William E. Dever, appearing *pro se*, was employed by Ecolab at the Elk Grove Village facility from July 17, 2002 until his resignation on August 26, 2004. When he began working at Ecolab, Dever was classified as "Assembly II" and reported to Chris Gano. Dever's job duties were to work in the refurbishing area sandblasting parts and refurbishing dishwashers.

On September 27, 2002, Gano gave Dever his 60-day review. Dever was rated as "meeting requirements." Near the end of 2002, Dever was transferred to a new position in the refurbishing area. There, he rewired machines, installed new switches and plumbing, and replaced brackets. Gano continued to be Dever's supervisor in the new area.

On November 22, 2002, Gano gave Dever a four-month review. Dever's overall rating was "needing improvement." As to specific areas, Plaintiff rated as "needs improvement" in the categories of "team player," "communicator," "customer service," "problem solver," "job performance," and "community." Gano made specific comments that Dever was "not a very good team player" and that "he had butted heads with several of his co-workers." Additionally, Dever was told that he needed to work on his interpersonal communication, that his "lack of communication with his coworkers resulted in his inability to work through problems." It was noted that the change in work areas he had undergone "seemed to have helped" but "should not have been necessary."

In February 2003, Plaintiff requested and received a transfer back to the original area from which he had come. The reason for Plaintiff's request was that he and a co-worker, in Dever's words, "were butting heads on who was going to be in charge of that area." As related in his deposition, both Dever and the co-worker "wanted to tell each other what to do and that didn't work out." Plaintiff's compensation was unchanged as a result of the move.

What happened in the first half of 2003 is not entirely clear. Defendant mischaracterizes the record as saying that the February 2003 move was to the "control heads" or "control system" department. Dever's transcript (upon which Defendant relies), however, quite clearly shows that the request and transfer were to his original position. The move to control heads, according to

2

Dever (again via his deposition transcript) was not until July 2003. But there is a June 20, 2003 formal written warning, authored by Chris Gano, indicating that Dever was in control heads. So far as the actual admissible facts indicate, then, Dever was moved to control heads after February but before June in 2003.

The move to control heads included a promotion to "Assembly III" and a corresponding increase in pay.

The June 20th letter reflected that Dever had low productivity in control heads: 66% for him as compared to a departmental average of 88%. Plaintiff admits that he had the low productivity ratings, but he explains that his low productivity was due to an injured right hand. He also states his premature elevation to the control heads department led to his poor productivity numbers.

On July 25, 2003, Chris Gano gave Plaintiff his annual review. Gano gave Plaintiff an overall rating of "needing improvement." He rated as "needs improvement" in the specific categories of "team player," "communicator," "continuous improvement," "flexible," "job performance," "community," and "productivity." Gano told Plaintiff that he does not interact well with most of his co-workers, that he consistently argues with his group leader, and that he frequently works outside the chain of command. The report also reiterated that "communication is one of his weak points" and that his poor communication skills hold him back. The report acknowledged that the control heads department may not be the best fit for him.

Plaintiff developed a record of tardiness and absenteeism, a record Plaintiff does not dispute. On July 31, 2003, Gano gave Dever a verbal warning for arriving twenty minutes late to a 7 a.m. shift. On December 10, 2003, Dever got another warning after missing a whole day of

3

work on December 5th, in excess of his allotted vacation days. On February 11, 2004, Gano formally documented an incident in which Plaintiff was found asleep in his car at 1:00 p.m. when he should have been back at his shift at 12:30 p.m. On June 23, 2004, Plaintiff was again cited for tardiness, having arrived at 7:03 a.m. for a 7:00 a.m. shift.

On March 25, 2004, Gano issued Plaintiff a formal written warning for low productivity. Plaintiff countered that his productivity was low only because he was working on the ET6600, which he claims is the most difficult machine to refurbish. He points to Eric Bayani, under 40 and Asian, who works on smaller machines. Plaintiff states that he could have avoided his negative reviews if he were granted transfers he had requested to either the shipping or customer service departments.

On April 27, 2004, Gano issued Plaintiff another formal written warning for substandard productivity. That warning led to a three-day suspension.

On June 3, 2004, Plaintiff received a formal written warning for inferior quality and poor workmanship. This warning arose out of Plaintiff's faulty construction of an ET-5 control head. The ET-5 in question had such defects as exposed wires, an improperly connected wire, and generally poor wiring. Plaintiff disputes that he caused the flaws in the ET-5.

On July 27, 2004, Plaintiff's second annual review led to another rating of "needs improvement." Plaintiff again rated as "needs improvement" in multiple specific categories. Further, Plaintiff was told that he still needed to work on his interpersonal communication, that "the quality of his work reflects his lack of competence and ability to transition from one box type to another, and he "does not adjust well to new processes or tasks." He was also told that

4

his "lack of knowledge results in repeated training when changing from one control box type to another."

Sometime in that same month, July, 2004, Plaintiff was told he would be transferred to the receiving department effective August 6, 2004. Defendant claims Plaintiff's poor performance led to the transfer. There was no change in Plaintiff's pay when he moved to receiving.

Plaintiff worked in receiving for three weeks before resigning. He walked off the job on August 26, 2004. Plaintiff claims that he walked off because of a racially hostile environment. He points to two incidents as evidencing this hostility. First, he claims that his supervisor in receiving, Roberto Gomez, made him use an electric hand cart to haul machines and parts around the department. Plaintiff preferred to use a forklift. He did not have a license and when he asked Mr. Gomez about acquiring one, Mr. Gomez allegedly laughed out loud and stated "I have a forklift driver." Plaintiff believes this was part of a conspiracy to keep his productivity low.

The second incident Plaintiff alleges was discriminatory relates to Plaintiff's assignment to the receiving department. Plaintiff says that the men in receiving, who were generally Hispanic, conspired to deny him overtime. Ecolab counters that Plaintiff's lack of overtime simply reflected the fact that he was junior in that department (having just been reassigned there). Plaintiff tacitly acknowledges the seniority policy and argues that the whole point was to assign him to a department where he would be junior and thus by definition receive no overtime opportunities.

Plaintiff quit Ecolab after approximately three weeks in receiving. He claims he resigned because when he brought up the alleged racial conspiracy with a Production Manager, John

Clerken (a white man), that official did no investigation into the alleged discrimination of the Hispanic Supervisor (Gomez) or co-workers.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University,* 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Freeman v. Madison Metropolitan School Dist.*, 231 F.3d 374, 379 (7th Cir. 2000) (quotation omitted). The court applies this standard with added rigor in employment discrimination cases where issues of intent and credibility often dominate. See *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

**III. DISCUSSION**

Plaintiff argues that his demotion to the receiving department, as well as his resignation, were prompted by Ecolab's purported age and race discrimination. Because Plaintiff has not produced evidence of discriminatory intent, so I must grant Ecolab's motion for summary judgment on all remaining claims.

Plaintiff alleges that his treatment at Ecolab amounted to harrassment, discrimination, and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

Under federal civil rights laws, it is an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It is similarly unlawful to do so because an individual is at least 40 years of age. *See* 29 U.S.C. §§ 623, 631. It is undisputed here that Plaintiff is a white male over 40 years of age.

To survive a summary judgment motion in a discrimination claim under the ADEA or Title VII a plaintiff must present either direct or indirect evidence of discriminatory intent. *Naik v. Boehringer Ingelheim Pharms.*, 627 F.3d 596, 599-600 (7th Cir. 2010). Dever does not have direct evidence of discrimination, so he attempts to prove discriminatory intent through the indirect method, which normally involves establishing a prima facie case under the familiar *McDonnell Douglas* formula. *See id.* (citation omitted). Accordingly, he must show that: (1) he is a member of the protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated

employees not in his protected class were treated more favorably. *Id.* If he establishes all four elements, the burden shifts to Ecolab to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If Ecolab meets its burden, Plaintiff must demonstrate that the reasons offered were pretextual.

In cases where the plaintiff argues that the defendant is lying about the proferred reasons for the adverse employment action taken against him, the Seventh Circuit allows a modified approach to *McDonnell Douglas* that essentially puts all the focus on the issue of pretext. *See, e.g., Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 822-23(7th Cir. 2006).

This case is an appropriate candidate for the modified approach. Here, Plaintiff has conceded that his productivity numbers were low, that he was tardy on the days Ecolab accused him of being so, and that he had exhibited the interpersonal communications problems that Ecolab consistently noted in his performance reviews. What Plaintiff argues is that he only exhibited these flaws because Ecolab overpromoted him into a position in which he was doomed to fail, and that Ecolab should have either not promoted him so quickly or should have demoted him earlier in order to give him a better chance at developing his skills properly. He also argues that his supervisor, Chris Gano, disliked him. He concedes that he is not sure whether it is due to his age, his race, or some other factor (he has offered that Gano had non-specific "personal problems" that could also be the source of the animus). Like one of the plaintiffs in *Hague*, however, Dever "does not comprehend his legal burden." *Id.* at 824. Dever cannot simply assert that Ecolab was wrong for firing him and or that they mismanaged his career, he must produce evidence that Defendant "lied about its reasons for firing him" and the real reason was a proscribed form of discrimination. *Id.*

There is no evidence here that Defendant was dishonest about its reasons. Again, Plaintiff himself admits to essentially all of the shortcomings noted in his reviews. To be sure, he puts the blame for those failures largely on Ecolab and in particular on his supervisor, Chris Gano, for failing to properly manage his career. But beyond Plaintiff's conclusory assertion that Defendant deliberately set him up for failure because of his age and race, I see no evidence to support that charge. No reasonable jury could side with Plaintiff and infer in these circumstances that Ecolab conducted a two-year, conspiratorial scheme to keep Plaintiff in an important position only to have him develop a poor record of performance so he could ultimately be demoted. There's no evidence of that theory, so Plaintiff's discrimination claim fails.

Plaintiff has an alternative theory of constructive discharge. Basically, Plaintiff argues that upon his arrival at the receiving department, he was subject to a racially hostile work environment. To prove this claim, Dever would have to show, among other things, that his work environment was objectively a hostile one. This means showing that "his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Simpson v. Borg-Warner Auto.*, 196 F.3d 873 (7th Cir. 1999). It also requires evidence that the intolerable conditions were so because of discrimination. On this record it would be impossible to conclude that the environment was the type of "hellish" workplace actionable under Title VII or the ADEA. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995). It would be harder still to show that whatever hostility was present was due to race or age. In deciding to walk off the job in August, 2004, Plaintiff pointed to the fact that he was made to use a handcart rather than a forklift to accomplish his tasks. He also cites the example of two Hispanic co-workers allegedly conspiring to take his overtime. On objective basis, these facts do not amount

9

to a hostile work environment. Further, other than the fact that men who are said to have conspired against Dever were Hispanic, there is no evidence that they took his overtime for racial reasons. Plaintiff himself concedes that seniority is what grants primacy in overtime opportunities, so he is left to conclude that he was deliberately placed in a position where he was junior in order to have no meaningful shot at overtime. But again, there is just no evidence of this conspiracy other than Plaintiff's supposition.

Plaintiff's final theory is one of retaliation. However, he has failed to indicate what, if any, statutorily protected activity he engaged in. *See, e.g., Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004) (engagement in statutorily protected activity is necessary evidence under either direct or indirect method of proof in retaliation cases).

## IV. CONCLUSION

For the foregoing reasons, Defendant Ecolab, Inc.'s motion for summary judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: June 5, 2012